UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KENNETH FOSTER-BEY, ET AL.,

      Plaintiff(s),

v.

JOHN S. RUBITSCHUN, ET AL.,

      Defendant(s).

                              /

Case No. 05-71318

Honorable Nancy G. Edmunds

**ORDER GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [9]**

This § 1983 case presents Constitutional challenges to Michigan's parole policies. Defendants' motion to dismiss, pursuant to FED. R. CIV. P. 12(b)(6), is presently before the Court. For the reasons set forth below, the motion is GRANTED IN PART and DENIED IN PART.

**I.    Background**

All seven plaintiffs[1] were convicted in Michigan state courts before October 1, 1992 and sentenced to life imprisonment with the possibility of parole. (Compl. ¶ 1.) Plaintiffs are still in the custody of the Michigan Department of Corrections ("MDOC") at various facilities. (Id. ¶¶ 1, 12-18.)

---

[1]    The plaintiffs are Kenneth Foster-Bey, John Alexander, Waymon Kincaid, William Sleeper, Robert Weisenauer, Eric McCullum, and Gerald Lee Hessell. (Compl. ¶¶ 12-18.) The complaint is styled as a class-action to represent "[a]ll parolable lifers in the custody of the Michigan Department of Corrections who were convicted before October 1, 1992, and whose parole . . . has [been] denied . . . ." (Id. ¶ 19.) Plaintiffs filed a motion for class certification on April 5, 2005. This motion has been held in abeyance until Defendants' motion to dismiss is resolved. (July 6, 2005 Order.)

Plaintiffs have named the members (including the chair) of the Michigan Parole Board ("the Board")[2] as well as the director of MDOC[3] as defendants in this action.  (Id. ¶¶ 27-30.) Defendants have been named "individually and in their official capacities."  (Id. at 1.)

In the complaint, Plaintiffs allege that the amendments to Michigan's parole laws and the Board's policies (1) constitute *ex post facto* laws and thus violate U.S. CONST. art. I, § 10, cl. 1 and (2) deprive them of due process in violation of U.S. CONST. amend. XIV, § 1. (Compl. ¶¶ 114-17.)   Specifically, they contend the following changes, when viewed collectively, create a Constitutional violation: their parole was reviewed every other year, but now only every five years (id. ¶¶ 94-95); they are no longer entitled to an in-person hearing (id. ¶¶ 96-97); written reasons for denial are not required, but were before (id. ¶¶ 98-99); "a statement of no interest or a pass-over" is no longer considered a formal Board decision subject to judicial review (id. ¶¶ 100-03); and, the Board has changed from an independent entity to one under the direct authority of Michigan's executive department (id. ¶¶ 104-05).  Defendants filed a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(6).

## II.    Standard of Review

"Dismissal pursuant to a Rule 12(b)(6) motion is proper only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *United Food & Commercial Workers Local 1099 v. City of Sidney*, 364 F.3d 738, 745 (6th Cir. 2004)(quotation and citation omitted).  The factual allegations in the

---

[2]    John S. Rubitschun is the chairman of the parole board.  (Compl. ¶ 27.)  James Atterberry, Miguel Berrios, Charles Braddock, Stephen DeBoer, Enid Livingston, James Quinlan, Marianne Samper, Barbara Sampson, and Artina Hartman are the other members of the board.  (Id. ¶ 28.)

[3]    Patricia L. Caruso is the director of MDOC.  (Compl. ¶ 30.)

complaint must be looked at as if they were true. *Id.* However, the court need not adopt the plaintiff's legal conclusions or unwarranted factual inferences. *Id.*

## III.   Analysis

### A.  Background Cases

The issues presented by Plaintiffs' complaint are not new; the Court recognizes that it does not write on a blank slate.  It is therefore helpful to turn first to the cases which address the relationship at issue here–what changes in State's parole procedures violate the *Ex Post Facto* Clause.

In *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 501 (1995), the Supreme Court considered a California amendment which changed the frequency of parole suitability hearings.  Specifically, at the time of the plaintiff's conviction, the parole board was required to hold hearings on an annual basis.  *Id.* at 503 (citation omitted).  The amendment permitted (but did not require) hearings to be postponed for three years if the prisoner was convicted of more than one offense which involved the taking of a life.  *Id.* (citation omitted).

The *Morales* Court rejected the plaintiff's proposed approach that

> would require that [courts] invalidate any of a number of minor (and perhaps inevitable) mechanical changes that might produce some remote risk of impact on a prisoner's expected term of confinement.  Under [this] approach, the judiciary would be charged under the *Ex Post Facto* Clause with the micromanagement of an endless array of legislative adjustments to parole and sentencing procedures . . . .

*Id.* at 508.  Instead, the Court held that the *Ex Post Facto* Clause was violated only if the retroactive change "produces a sufficient risk of increasing the measure of punishment attached to the covered crimes."  *Id.* at 509.

The California amendment, however, "create[d] only the most speculative and attenuated possibility of . . . increasing the measure of punishment . . . ." *Id.* In reaching this conclusion, the Court noted that, for the class of prisoners affected by the amendment, "the likelihood of release on parole is quite remote." *Id.* at 510. Moreover, "the [parole board] must conduct a full hearing and review of all relevant facts" at the prisoner's initial parole hearing–which occurred at the same time before and after the amendment–and then "state the bases for its finding." *Id.* at 511 (quotation and citation omitted). In addition, the Court cited to the fact that the parole board was given discretion to tailor the frequency of (and could even expedite) hearings. *Id.* at 511-13.

Before the Supreme Court issued its decision in *Morales*, a class action suit was filed in this district challenging Michigan's 1992 statutory amendments to MICH. COMP. LAWS § 791.234(6) and § 791.244(1). *See Shabazz v. Gabry*, Case No. 93-73316. The class included prisoners, convicted before 1992, who were "serving long, indeterminate sentences, parolable life sentences, and mandatory life sentences." *Shabazz v. Gabry ("Shabazz I")*, 900 F.Supp. 118, 121 (E.D. Mich. 1995). The court then split the plaintiffs into subclasses based on the year in which they were convicted: (1) between 1982 and 1992, (2) between 1977 and 1982, and (3) before 1977.[4] *Id.*

The statute in place at the time of subclass 1's convictions provided for an initial "interview after four years and then every two years thereafter . . . ." *Id.* For subclass 2, the frequency was governed by a Michigan administrative regulation. *Id.* at 121-22. It

---

[4]   The third subclass also included prisoners who received mandatory life sentences between 1977 and 1982. *Shabazz I*, 900 F.Supp. at 121.

2:05-cv-71318-MOB-VMM   Doc # 44   Filed 08/18/05   Pg 5 of 17   Pg ID 435

required "members of subclass 2 [to be] interviewed after seven years, again at three years and then every year thereafter . . . ."  *Id.* at 122.

> When the members of [subclass 3] were convicted and sentenced, there was no applicable statute or codified administrative regulation governing the frequency of parole board review.  Instead, the frequency of parole review for these inmates was governed by the internal policies and procedures of the parole board itself and by policy directives established by the MDOC. Pursuant to these procedures and directives, the practice of the parole board was to interview [members of the subclass] after seven years of incarceration, then every three years thereafter . . . .

*Id.*  In contrast, the statutes at issue changed the process for all classes so that the first parole interview was given after ten years and then every five years thereafter.  *Id.* at 122.

After *Morales* was decided, the district court, addressing cross motions for summary judgment, held that the amendments constituted *ex post facto* laws for subclasses 1 and 2, but not for subclass 3.  *Id.* at 120-21.  The court found "the relationship between regularly scheduled parole hearings and an inmate's opportunity for early release" to be "quite significant."  *Id.* at 127.  Although it noted that "meaningful statistics about [the amendment's] effect on early release are unavailable[,]" the court relied on anecdotal evidence–including the opinion testimony of a former Board member–to support its holding that there was a sufficient risk of longer sentences for some members of subclasses 1 and 2.  *Id.* at 127-28, 130.[5]  The court found, however, "that the internal procedures and policy directives of the MDOC and the parole board in effect when members of subclass 3 committed their crimes are not 'laws' under Article I, § 10."  *Id.*

---

[5]   The district court distinguished the statute in *Morales* because the Michigan amendments (1) covered "a large class of prisoners" and thus the likelihood of parole was not remote; (2) did not require "a case specific inquiry [to be] conducted before [the inmates] were consigned to the less frequent hearing schedule[;]" and (3) delayed the initial *and* the subsequent hearings.  *Shabazz I*, 900 F.Supp. at 126.

On appeal, the Sixth Circuit reversed in part, finding that there was not a sufficient risk of increased sentences for any subclass.  *Shabazz v. Gabry ("Shabazz II")*, 123 F.3d 909, 910 (6th Cir. 1997), *cert. denied*, 522 U.S. 1120 (1998).  Specifically,

> [w]here amendments to state parole laws postpone initial mandatory parole hearings and decrease the frequency of subsequent mandatory hearings, but nevertheless provide other viable opportunities for parole, such amendments do not produce a "sufficient risk of increasing the measure of punishment attached to the covered crimes."  The 1992 amendments do not change the standard for parole, but allow prisoners ample opportunity to petition the Parole Board for interviews.  Further, the 1992 amendments allow the Parole Board to grant parole interviews of its own volition, and to grant prisoners parole without an interview.

*Id.* at 914.  The court noted that the district court's reliance on "anecdotal observations and personal speculations" were not sufficient to show a sufficient risk.  *Id.* at 915.  The district court's holding that internal memoranda and policy directives were not "laws" for purpose of the *Ex Post Facto* Clause was affirmed.  *Id.* at 915-16.

In *Garner v. Jones*, 529 U.S. 244 (2000), the Supreme Court took up this issue again, this time examining Georgia's parole system.  At the time of the plaintiff's conviction, the Georgia Parole Board Rules required parole hearings to occur every three years.  *Id.* at 247 (citation omitted).  A Georgia statute provided the board with discretion to determine the frequency of these hearings however.  *Id.* (citation omitted).  So, it later amended its rules to provide for reconsideration "at least every eight years."  *Id.* (citation omitted).[6]  However, the rules permitted the board to hold hearings more frequently and to give any inmate an expedited hearing based on new information or a change in circumstances.  *Id.* at 248.

---

[6]     The board changed back to the three year time period after the Eleventh Circuit, in an earlier case, found that the change constituted an *ex post facto* law.  *See Atkins v. Snow*, 922 F.2d 1558, *cert. denied*, 501 U.S. 1260 (1991); *Garner*, 529 U.S. at 247.  After the *Morales* decision, however, the board returned to the eight year interval.  *Id.* at 248.

The Eleventh Circuit Court of Appeals found that the rule was an *ex post facto* law. *See id.* at 248-49.  The Supreme Court reversed, holding that "[t]he requisite risk is not inherent in the framework of [the amended rule.]"  *Id.* at 251.  It then noted that,

> [w]hen the rule does not by its own terms show a significant risk, the respondent must demonstrate, by evidence drawn from the rule's practical implementation by the agency charged with exercising discretion, that its retroactive application will result in a longer period of incarceration than under the earlier rule.

*Id.* at 255.  Based on the information in the record, the Court could not conclude whether "the change in Georgia law lengthened respondent's time of actual imprisonment" and therefore remanded for further consideration.  *Id.* at 256-57.

### B.  Defendants' Arguments for Dismissal

It is against this backdrop that Defendants filed their motion to dismiss.  They argue that (i) Plaintiffs lack standing; (ii) issue and/or claim preclusion bar the action; (iii) Plaintiffs were not deprived of a liberty interest; (iv) the changes in Michigan's parole policies do not constitute *ex post facto* laws; (v) the claims are barred by the statue of limitations; and (vi) Defendants are protected by qualified immunity.

### *1. Standing*

> [T]o satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 180-81 (2000)(citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561 (1992)).

Defendants first argue that there is no "injury in fact" because Plaintiffs do not possess a Constitutional right to parole.  As Defendants recognize, however, part of the injury claimed by Plaintiffs is the loss of the *procedural safeguards* that were in place at the time of their conviction.  The dilution of procedures may create a Constitutional injury.  Thus, Defendants' claim must be rejected.

Defendants argument regarding causation and redressability are the same: the Board retains complete discretion whether to grant or deny parole; therefore, different processes will not necessarily change the length of an inmate's sentence.  Again, this logic does not take into account that a dilution of procedural safeguards, in and of itself, is an injury.  If the Court were to rule that these changes violated the Constitution, the old procedures (or different permissible procedures) must be implemented.  This would redress Plaintiffs' injury.

The Court nonetheless recognizes that these standing issues parallel the analysis undertaken to determine whether a change in parole hearings constitutes an *ex post facto* law.  *See generally Morales*, 514 U.S. 499.  Standing is a threshold determination however. Unlike proving the merits of the case–that, in these parole cases, may require a statistical showing that there is a sufficient risk of an increased penalty–a plaintiff cannot be required to provide evidence of his injury at this initial stage; it is sufficient for him to state his injury so that the court may determine whether, assuming those facts do exist, it is cognizable. In this case, based on the allegations in Plaintiffs' complaint, there is an injury that was caused by Defendants and can be redressed by the Court.[7]

---

[7]    Defendants argument may be interpreted as follows: a new policy or law that only changes the procedures, when the Board retains complete discretion over the ultimate

## 2. Claim and Issue Preclusion

The doctrines of issue and claim preclusion prohibit a plaintiff from bringing a suit that was actually litigated or, for the latter, could have been resolved in a previous suit.[8]

---

decision, cannot constitute an *ex post facto* law.  This view was adopted by Justice Scalia in his concurrence in *Garner*:

> A statutory parole system that reduces a prisoner's sentence by fixed amounts of time for good behavior during incarceration can realistically be viewed as an entitlement–a reduction of the prescribed penalty–rather than a discretionary grant of leniency.  But that is immeasurably far removed from the present case.  In Georgia parole . . . is–and was at the time respondent committed his offense–a matter of grace.  It may be denied for any reason (except, of course, an unlawful one such as race), or for no reason.  And where, as here, the length of the reconsideration period is entrusted *to the discretion of the same body that has discretion over the ultimate parole determination*, any risk engendered by changes to the length of that period is merely part of the uncertainty which was inherent in the discretionary parole system . . . .
>
> It makes no more sense to freeze in time the Board's discretion as to procedures than it does to freeze in time the Board's discretion as to substance.  Just as the *Ex Post Facto* Clause gives respondent no cause to complain that the Board in place at the time of his offense has been replaced by a new, tough-on-crime Board that is much more parsimonious with parole, it gives him no cause to complain that it has been replaced by a new, big-on-efficiency Board that cuts back on reconsiderations without cause. . . . [A] policy statement or regulation, in the context of a system conferring complete discretion as to substance and as to the timing of hearings upon the Board, simply creates no reasonable expectation of entitlement . . . .  This is not an expectation of the sort that can give rise to *ex post facto* concerns.

*Garner*, 529 U.S. at 258-89 (Scalia, J., concurring)(emphasis in original).  This view was not, however, adopted by the five Justice majority.  *See id.* at 253 ("The presence of discretion does not displace the protections of the *Ex Post Facto* Clause.").  Thus, the rule does not control this Court's decision.

[8]   *See Hammer v. Immigration & Naturalization Serv.*, 195 F.3d 836, 840 (6th Cir. 1999)(Issue preclusion "applies only when (1) the issue in the subsequent litigation is identical to that resolved in the earlier litigation, (2) *the issue was actually litigated and decided in the prior action*, (3) the resolution of the issue was necessary and essential to a judgment on the merits in the prior litigation, (4) the party to be estopped was a party to the prior litigation (or in privity with such a party), and (5) the party to be estopped had a

Defendants argue that Plaintiffs cannot bring the present action because *Shabazz* put the

issues to rest.[9]  Some of the procedural changes cited by Plaintiffs, however, occurred after

the *Shabazz* case was filed (and decided).  *Compare* MICH. COMP. LAWS § 791.234(6)(a)

(1998)(requiring interviews "at the conclusion of 10 calendar years of the sentence and

every 5 years thereafter") *with* MICH. COMP. LAWS § 791.234(6)(a) (2005 Supp.)(requiring

interviews "at the conclusion of 10 calendar years of the prisoner's sentence and thereafter

as determined by the parole board").  Thus, in *Shabazz*, it was not possible for plaintiffs to

bring the claims or the court to resolve the issues presented in this case.[10]

---

full and fair opportunity to litigate the issue.")(citations omitted)(emphasis added); *Executive Arts Studio, Inc. v. City of Grand Rapids*, 391 F.3d 783, 795 (6th Cir. 2004)("[C]laim preclusion bars a second, subsequent action when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) *the matter in the second case was, or could have been, resolved in the first.*")(quotation and citation omitted)(emphasis added).

[9]   Defendants also contend that *Michigan v. Hill*, --- N.W.2d. ---, 2005 WL 1630066 (Mich. Ct. App. 2005), forecloses consideration of the issues before this Court.  In *Hill*, the defendant argued that Michigan's "life means life" parole board policy violated the *Ex Post Facto Clause*.  For Plaintiffs to be precluded from making a similar argument, they must have been a party in *Hill*.  *See* note 9 *supra*.  Presently, however, the defendant in *Hill* is not a plaintiff in this action.  Thus, Plaintiffs are not precluded from making the argument that the changes in Michigan's parole policies violated their Constitutional rights.

[10]   Defendants' argue that the Court cannot consider the frequency change in inmates' parole hearings as set forth in the 1992 amendments because that was considered in *Shabazz*.  This claim is incorrect.  It ignores the fact that the Court must examine the *cumulative* changes in the parole procedures since an inmate's conviction.  A state cannot continuously make minor changes in the parole process that, taken together, create a sufficient risk of an increased penalty; but, when looked at alone, would not violate the *Ex Post Facto* Clause.

For example, a state makes change A to the parole procedure after Inmate is convicted.  Inmate brings a suit challenging A, but a court finds that it does not create an *ex post fact* law.  The state subsequently makes changes B, C, and D.  Inmate is not precluded from bringing a Constitutional challenge.  And, importantly, the court must be able to compare the original parole policy with the new policy (which includes change A as well as changes B, C, and D) to see if there is a sufficient risk of increasing the measure

Defendants further argue that the changes that occurred after *Shabazz* are not relevant for *ex post facto* purposes.  Specifically, they point to the rule that internal policies do not generally constitute "laws."  It has been held

> that the operative factor in assessing whether a directive constitutes a "law" for *ex post facto* purposes is the discretion that the Parole Commission retains to modify that directive or to ignore it altogether as the circumstances may require. . . . . *Ex post facto* concerns do not obtain where a regulation serves not as a binding constraint on the administrative decisionmaking process, but merely as a guide to the proper exercise of discretion.

*Smith v. United States Parole Comm'n*, 875 F.2d 1361, 1367 (9th Cir. 1988)(citations omitted); *see also Ruip v. United States*, 555 F.2d 1331, 1335 (6th Cir. 1977)(Parole Commission guidelines do not "have the characteristics of law.  They are not fixed and rigid, but are flexible.  The Commission remains free to make parole decisions outside of these guidelines.").  In *Shabazz*, the Sixth Circuit also held that "the policies behind the *Ex Post Facto* Clause" show why policies should not be construed as laws.  *Shabazz II*, 123 F.3d at 916.  Specifically, the *Ex Post Facto* Clause was created

> to protect citizens from retroactive increases in punishment. Changes in the administration and enforcement of statutes have little impact on these expectations. . . . [T]he internal memoranda and policy directives . . . are not published . . . or presented to the public for comment.  Accordingly, the . . . policies and directives did not likely influence public expectations as to parole or create a reliance interest in the public . . . .

*Id.* (citation omitted).

---

of punishment.

As noted above, however, some changes were legislative.[11]  In addition, in *Garner*,

the Supreme Court noted the relevance of internal policies:

> The Court of Appeals erred in not considering the Board's internal policy
> statement.  At a minimum, policy statements, along with the Board's actual
> practices, provide important instruction as to how the Board interprets its
> enabling statute and regulations, and therefore whether, as a matter of fact,
> the amendment to [the rule] created a significant risk of increased
> punishment.  It is often the case that an agency's policies and practices will
> indicate the manner in which it is exercising its discretion.  The Court of
> Appeals was incorrect to say the Board's policies were of no relevance in this
> case.  Absent a demonstration to the contrary, we presume the Board follows
> its statutory commands and internal policies in fulfilling its obligations. . . .
> The policy statement here, [in contrast to the one in *Morales*], is a formal,
> published statement as to how the Board intends to enforce its Rule.  It
> follows *a fortiori* . . . that the Court of Appeals should not have disregarded
> the policy.

*Garner*, 529 U.S. at 256-57 (citations omitted).[12]

Some of the changes that Plaintiffs cite in their complaint were the subject of previous

cases–courts have agreed with the Board's interpretation of the parole statute that, for

instance, a "no interest" decision was not a final decision.  *See, e.g., In re Parole Johnson*,

596 N.W.2d 202 (Mich. Ct. App. 1999).  At this time, however, it is not clear how the Board

---

[11]  *Compare* MICH. COMP. LAWS § 791.234(6)(a)  (1998) *with* MICH. COMP. LAWS §
791.234(6)(a)  (2005  Supp.)(changing  interview  requirements).    Also,  the  Michigan
Legislature amended the statute to remove prisoners' right to appeal denials by the parole
board.  *See Jackson v. Jamrog*, 411 F.3d 615, 617-18 (6th Cir. 2005).  Defendants argue
that the Sixth Circuit, in *Jackson v. Jamrog*, considered this change and found that it did
not create a Constitutional violation.  However, the *Jackson* Court was only faced with an
Equal Protection Clause challenge to the statute.

[12]  In *Fletcher v. District of Columbia*, 370 F.3d 1223, 1228 (D.C. Cir. 2004), the D.C.
Circuit rejected plaintiff's claim because "a parole guideline is not a 'law' within the
proscription of the *Ex Post Facto* Clause; the Commission's guidelines are merely policy
statements, from which the Commission may depart in its discretion."  Upon rehearing, this
holding was vacated based on *Garner*:  "The Supreme Court thus foreclosed our
categorical distinction between a measure with the force of law and guidelines that are
merely policy statements . . . ."  391 F.3d 250, 251 (D.C. Cir. 2004)(citation omitted).

implemented this change–*e.g.*, through a formal, published statement.  Pursuant to clear language in *Garner*, this is relevant to the Court's examination.  Nonetheless, Defendants' argument must be rejected because some of the changes occurred by statute and thus, constitute "laws" under an *Ex Post Facto* Clause analysis.

### *3. Interest that Triggers Due Process Protection*

The Fourteenth Amendment prohibits states from depriving a person of "life, liberty, or property" without due process of law.  U.S. CONST. amend. XIV, § 1.  The courts have found that this clause gives rise to two types of claims–procedural and substantive.  Plaintiffs' claim involves the former.  That is, they contend that the procedures followed before making a decision regarding parole do not satisfy the minimum level required by the Constitution.

> Th[e Sixth Circuit] applies a two-part analysis to procedural due process claims.  First, the court must determine whether the interest at stake is a protected liberty or property right under the Fourteenth Amendment.  Only after identifying such a right do [courts] continue to consider whether the deprivation of that interest contravened notions of due process.

*Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 762-63 (6th Cir. 2005)(quotation and citation omitted).

The right to parole (*i.e.*, the interest at issue here) cannot be classified as any conceivable type of property.  Thus, to implicate procedural due process protection, it must be a liberty interest.  In *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994)(en banc), however, the Sixth Circuit ruled that, in Michigan, "the parole discretion is broad . . . ."  Therefore, "'the State has not created a constitutionally protected liberty interest' by enacting procedural rules."  *Id.* at 1165 (quoting *Olim v. Wakinekona*, 461 U.S. 238, 249

(1983)).  Although this holding seems to end the inquiry, Plaintiffs have come up with a

novel approach in an attempt to keep the claim alive.

Plaintiffs first assert that the Due Process Clause entitles them to be sentenced based

on accurate information.  Relying on this rule, they contend that the Constitution was

violated because the sentencing judge assumed that the parole procedures in place at the

time of the conviction would continue to be used.  Plaintiffs' premise is correct–a judge's

reliance on a factual error in sentencing does violate due process.  *See Collins v. Buchkoe*,

493 F.3d 343, 346 (6th Cir. 1974).  However, their conclusion is incorrect–in this case,

there was not an error that creates a due process violation.  If the sentencing judge

assumed that the parole procedures would not change, this was improper.  The procedures

are consistently altered.  Moreover, even if the procedures change, there is no assurance

that a person, after his conviction and sentence, will ever satisfy the substantive

requirements necessary for parole.  Thus, Plaintiffs' argument must be rejected.  To hold

otherwise would permit a plaintiff to bring a due process claim that would directly conflict

with the Sixth Circuit's holding that, in Michigan, a liberty interest does not exist in parole.

Defendants' motion to dismiss this count is therefore granted.

### 4. Ex Post Facto Clause Violation

Defendants argue that the amendments to Michigan's parole hearing procedures do

not violate the *Ex Post Facto* Clause.  There are two ways that amendments to these

procedures can create a violation: a significant risk may be shown either (1) "by [rule's] own

terms"–*i.e.*, on its face or (2) "the rule's practical implementation by the agency charged

with exercising discretion . . . ."  *Garner v. Jones*, 529 U.S. at 255.  The latter requires the

plaintiff to draw on outside evidence.  *See, e.g., id.* at 256 (requiring the court of appeals

to determine "whether, *as a matter of fact*, the amendment to [the rule] created a significant risk of increased punishment")(emphasis added).  The motion to dismiss presently before the court, however, does not permit the consideration of this extraneous information.  Thus, the issue is not ripe for consideration.

### *5. Statute of Limitations*

Defendants claim that the changes occurred more than three years ago and are thus barred by the statute of limitations.  Plaintiffs respond that the harm is ongoing and, accordingly, they are permitted to bring an action for injunctive relief (but not damages).

"Th[e Sixth] Circuit employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions."  *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003)(citation omitted).  Specifically, a continuing violation may sometimes exist in a hostile work environment claim.  *See, e.g., Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002).  It does not normally occur in other actions because they almost always involve discrete acts.  This is, however, an atypical case that parallels the first type of continuing violations in employment discrimination.  This type occurs

> where there is some evidence of *present* discriminatory activity giving rise to a claim of a continuing violation; that is, where an employer continues presently to impose disparate work assignments or pay rates . . . . The rationale underlying this category is that the employer commits an illegal act, such as giving unequal pay for equal work, *each time* the employer dispenses the unequal pay.  It is irrelevant that the employer has committed the same illegal act at other times prior to the beginning of the relevant limitations period.

*Dixon v. Anderson*, 928 F.2d 212, 216 (6th Cir. 1991)(quotation and citations omitted)(emphasis in original).  Here, assuming the procedures are not Constitutional, a violation of the *Ex Post Facto* Clause would occur every time they are used to deny

15

Plaintiffs parole.  This is the type of claim that gives rise to a continuing violation.  Thus, the

statute of limitations does not bar the action.[13]

*6. Qualified Immunity*

Defendants argue that they are protected by the doctrine of qualified immunity.

Plaintiffs do not seek damages however; they seek an injunction–*i.e.*, a form of relief that

does not implicate the functions of the qualified immunity doctrine.  Thus, Defendants

qualified immunity claim must be rejected.

---

[13]   Defendants also point out that the Michigan Supreme Court has held that the continuing violations doctrine is not compatible with the statute of limitations.  *See Garg v. Macomb County Cmty. Coll. Mental Health*, 696 N.W.2d 646, 656 (Mich. 2005).  This is not dispostive however.  Although "the duration of the statute of limitations for § 1983 actions is governed by state law . . . , federal standards govern when the statute begins to run." *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2004)(citations omitted).

16

## IV.   Conclusion

For the reasons set forth above, the Court hereby orders that Defendants' motion to

dismiss Plaintiffs' Due Process Claim is GRANTED IN PART and DENIED IN PART.

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  August 18, 2005

I hereby certify that a copy of the foregoing document was served upon counsel of record
on August 18, 2005, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager